# Kozak *v.* Philadelphia Rapid Transit Co., Appellant.

*Negligence—Street railways—Passenger alighting—Sudden starting —Case for jury.*

In an action of trespass against a street railway company, the plaintiff testified that she was injured by the sudden starting of

defendant's car from which she was alighting. She also testified that the cause of her injury was the negligent closing of the door and the raising of the step, upon which she was standing.

That plaintiff produced testimony that the car could not start while the door was open and that the step could not be raised when there was a weight of more than twenty-five pounds upon it. The witness did not testify that he made a test with the particular car involved, and admitted that if the power was shut off and the door opened, the car could move if the brakes were not applied.

Under such circumstances, the case was for the jury and the verdict for the plaintiff will be sustained.

In the light of this testimony, the case was not one that was controlled by "incontrovertible physical facts." Whether the car would start when the door was open and whether the step would raise when it had a weight exceeding twenty-five pounds upon it, depended upon oral testimony that had to be submitted to the jury.

When by reason of conflicting statements, the plaintiff's testimony leaves the question of her contributory negligence in doubt, since she has not the burden of proof on that issue, it is for the jury to decide the real facts in relation thereto, notwithstanding the conflict.

Argued October 27, 1927. Appeals Nos. 226 and 227, October T., 1927, by defendant from judgment of M. C., Philadelphia County, February T., 1926, No. 960, in the case of John Kozak and Anna Kozak, v. Philadelphia Rapid Transit Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in favor of Anna Kozak, in the sum of $1,000, and in favor of John Kozak in the sum of $550, and judgments thereon. Defendant appealed.

*Error assigned* was the refusal of defendant's motion for judgment non obstante veredicto.

*Lewis C. Cassidy,* and with him *J. J. K. Caskie,* for appellant.

*Maurice G. Weinberg,* for appellee.

OPINION BY GAWTHROP, J., March 2, 1928:

This is a suit by a husband and wife for damages for personal injuries to the latter. The allegation was that while the wife, who was a passenger on one of defendant's trolley cars was in the act of alighting therefrom, she was thrown into the street by a starting of the car made suddenly and without warning to her. These appeals by defendant are from the judgments entered on the separate verdicts for plaintiffs. The assignments of error complain only of the refusal of the motions for judgment n. o. v. and for a new trial.

The wife testified that on December 31, 1925, she was a passenger on a trolley car operated by defendant; that, when the car on which she was riding had almost reached the corner of 15th and Spring Garden Streets and was still moving, the conductor opened the middle door; that she then started for the door and when the car stopped she "stepped with my two feet on the first steps." ...... Q. What happened after that, when you put both feet on the bottom step, what happened after that? A. The car just like moved, started to like move, and I wanted to go— I lift up, and I wanted to go to the ground and I fell down from the steps. Q. What caused you to fall down from the steps, if you know? Why did you fall down the steps? A. Because the car started to move, I can't stay still when the car just like moved. Q. When the car started to move, what happened to the steps? A. They just like picked me up. The following questions and answers appear in her cross-examination: Q. You had your two feet on the steps? A. Yes. Q. You say the trolley car step was raised, is that so? A. Yes, sir. Q. It was raised with you standing on the step? A. Yes, I was standing with both feet. Q. How much do you weigh? A. 148, I

used to weigh at that time. Q. And in raising it you felt, did you, the step being raised—you felt 'it? A. Yes. Q. What kind of a start did the trolley car make, did the trolley car start before the step was raised, did the car start before the step was raised? A. The car stopped. Q. I have it stopped, but did it start while your both feet was on the step? A. The car started to move while I had both feet on the step. Q. You are sure of that? A. Yes, sir. Q. Did it move quickly or slowly? A. Slow, not quickly, no, slowly, but started just moving off from the corner. The car did not go so fast at once. It started 'slowly to go. The car was like shaking you know and they started to move. Q. And during that time you were thrown? A. Yes. Q. In what manner did the step raise, how did it raise? A. It raised because the conductor have to close the door and he did not 'see me, I had not got off from the car yet.'' A witness called by plaintiffs, when asked on 'cross-examination: ''When you saw her at the bottom step with the door open was it (the car) standing still then or was it still moving?'' answered: ''When she was on the step, the car just stopped, and then as soon as she made a motion like to get off the step the doors locked and she fell out.'' Q. When you say locked, ''do you mean locked or closed?'' A. I mean the doors were clo'sing.'' There was evidence that the wife plaintiff suffered injuries to her arm, leg and side, and that the physical violence suffered produced internal bleeding resulting in a miscarriage, which made it necessary for her to undergo an operation in a hospital in the following April. She testified that she was employed as an office cleaner at the Franklin Trust Company at a wage of $10 per week, and that she lost her wages during the period of about four months. Defendant called as a witness a bookkeeper of the Franklin Trust Company who produced weekly receipts

signed by the wife of plaintiff for the wages paid her during nearly every working day from January 1, 1926 to April 1, 1926. The jury found for the wife plaintiff for $1,000 and for the husband plaintiff for $550. There was abundant evidence, if believed, that the bills for medical and surgical services and hospital expenses which the husband was required to pay as the result of the accident and his loss of wages resulting from necessary absence from work while the wife was in the hospital were equal to or in excess of the verdict in his favor. Although the wife testified that at the time of the accident she gave her name to the conductor of the car, defendant called witnesses who testified that they were the conductor and motorman, respectively, of the car on which the wife plaintiff testified she was riding, and that they had no knowledge of the accident and did not see the woman on the day of the alleged accident. Defendant called also a witness who had been employed by it as foreman and superintendent of car maintenance for eighteen years, who testified that the type of car upon which the wife plaintiff testified she was riding would not move while the middle door was open, because the electric circuit is then broken and the controller is "dead." This witness testified also that the step of the car would not rise with a weight in excess of twenty-five pounds upon it and that he knew this fact because he had made tests with various cars of the same type. The witness did not testify that he made a test with the particular car involved. The witness admitted that if the power was shut off and the door opened the car could still move if the brakes were not applied.

In appellant's argument four points are made: (1) Plaintiff was guilty of negligence in alighting from a moving street car; (2) her testimony was so conflicting that the case should not have been submitted to the jury; (3) her version that she was thrown from

the car by the raising of the step while she was standing upon it is controverted by the indisputable physical facts; (4) and the court below was guilty of an abuse of discretion in not granting a new trial, in view of the "perjured testimony" concerning loss of earnings by the wife.

(1), (2) There was evidence, if believed, which warranted a finding by the jury that the car was stopped when plaintiff was attempting to alight therefrom. Therefore, the cases cited by appellant announcing the rule that it is negligence per se to step on or off a moving car are not in point. The jury could find under the evidence that the passenger was injured by the starting of the car and the raising of the step while she was standing with both feet upon it. The case of Bainbridge v. Union Traction Co., 206 Pa. 71, has no application here. In that case the plaintiff had stepped down on the running board of an open car which was still in motion and was thrown by the sudden stopping thereof. In the present case the verdict establishes the fact that plaintiff was safely on the bottom step of a closed car which had stopped, and was thrown off by a premature starting, or by the raising of the step while she stood upon it, or by the concurrence of both acts. Even if the passenger were negligent in descending to the lower step while the car was still in motion (which we do not decide, however) the jury could find that she had escaped that negligence and was safely standing there when the other act or acts of the defendant said to have caused her injury occurred. If defendant negligently started the car while she was safely at that point or threw her off by raising the step, it would be answerable. We think the court would have erred if it had failed to leave the questions of the defendant's negligence and the wife's contributory negligence to the jury. We find no merit in the contention on behalf of the appellant that the

wife's testimony was so conflicting and contradictory that it should not have been submitted to the jury. She was ignorant and had poor command of our language. But parts of her testimony affirmatively made out a case which, if believed, show it clear of contributory negligence. When, by reason of conflicting statements, the plaintiff's testimony leaves the question of his contributory negligence in doubt, since he has not the burden of proof on that issue, it is for the jury to decide the real facts in relation thereto, notwithstanding the conflict: Cronmuller v. Evening Telegraph, 232 Pa. 14; Ely v. Railway, 158 Pa. 233. The case is not ruled by Mulligan v. Lehigh Traction Co., 241 Pa. 139, where it was held that a plaintiff is not entitled to go to a jury if in attempting to prove directly a fact or series of facts upon which his right depends, he makes conflicting statements that are so irreconcilable that a finding one way or another would be a mere guess.

(3) The case is not one that is controlled by "incontrovertible physical facts," as appellant contends, and therefore Lessig v. Reading T. & L. Co., 270 Pa. 299, and kindred cases, do not apply. Whether the car would start when the door was open and whether the step would raise when it had a weight exceeding twenty-five pounds upon it depended upon oral testimony which had to be submitted to the jury: Pfeffer v. Johnstown, 287 Pa. 370.

(4) The question whether the court below was guilty of abuse of discretion in refusing to grant a new trial, in view of testimony denominated as "perjured" in respect to loss of earnings, is not raised by either assignment of error and was not raised in the court below by any of the reasons assigned for the granting of a new trial. For this reason, we shall not discuss it.

The assignments of error are overruled and the judgments are affirmed.